**In re George Thomas BLANKS, Peggy C. Blanks, d/b/a Blank's Minute Mart ID#: 56–1046382, Debtors.**

**Bankruptcy No. S–83–01322–SO5.**

United States Bankruptcy Court, E.D. North Carolina.

Sept. 10, 1986.

N. Hunter Wyche, Jr., Raleigh, N.C., for debtors.

Mark C. Kirby, Raleigh, N.C., for McPherson Beverages, Inc.

Richard D. Sparkman, Angier, N.C., Trustee.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the objection by McPherson Beverages, Inc. to the chapter 7 trustee's proposed order of distribution. At issue is whether an avoided preferential lien should be preserved under 11 U.S.C. § 551 to defeat a junior lien when the proceeds will go to pay costs of administration and priority tax claims, but nonpriority unsecured claimants will not receive anything. A hearing was held in Raleigh, North Carolina on September 2, 1986.

The debtors, George Thomas Blanks and Peggy C. Blanks, filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 12, 1983. The case was subsequently converted to a case under chapter 7 on May 2, 1985. The debtors operated a business, Blank's Minute Mart, which was sold by the debtors' chapter 7 trustee, Rich-

ard D. Sparkman, with all liens attaching to the proceeds. The sale of the business's real property brought $75,846.94 and with interest earned the trustee realized a total of $76,960.66.

The real property was encumbered by a deed of trust in favor of Roanoke Rapids Savings & Loan in the amount of $34,582.73 which the trustee paid. The remaining proceeds ($42,460.54) were claimed by two lienholders—Wilson Oil & Gas Company, Inc. ("Wilson"), with a deed of trust in the amount of $43,857.45, and McPherson Beverages, Inc. ("McPherson"), with a deed of trust in the amount of $22,061.18 (plus interest from May 13, 1983 at the rate of 8 per cent per annum plus attorney's fees).

The trustee brought two adversary proceedings to avoid the two deeds of trust. In the first action against McPherson Beverages, Inc. (Adversary Proceeding Number: S–85–0304–AP), the trustee was not successful and on January 13, 1986, this court entered a Memorandum Opinion and a Judgment in favor of McPherson Beverages, Inc., upholding the validity of its lien.[1]

The trustee, however, was successful in the second adversary proceeding against Wilson Oil & Gas Company, Inc. (Adversary Proceeding Number: S–85–0303–AP), and on January 23, 1986, this court entered a Memorandum Opinion and a Judgment avoiding Wilson Oil & Gas Company, Inc.'s $43,857.45 lien.[2]

The Wilson lien which was avoided was recorded on May 17, 1983, two days before the McPherson lien was recorded on May 19, 1983. Under North Carolina law, the deed of trust which is recorded first has priority. N.C. GEN. STAT. § 47–20 (1984); *Schuman v. Roger Baker and Associates,* 70 N.C.App. 313, 319 S.E.2d 308 (1984). Consequently, the avoided Wilson lien clearly had priority over the McPherson lien and that priority has not been disputed by McPherson.

The trustee now proposes to distribute the proceeds of the real property in a manner which assumes that the Wilson lien is preserved under 11 U.S.C. § 551 to defeat the McPherson lien. Specifically, the trustee proposes to distribute the proceeds from the sale of real property as follows:

| | |
|---|---|
| $76,960.66 | (includes interest) |
| – 34,582.73 | Payment to 1st lien of Roanoke Rapids S & L |
| $42,377.93 | |
| –19,514.32 | Costs of Administration ($9,407.87)—ch. 7 Costs of Administration ($10,106.45)—ch.11 |
| $22,863.61 | |
| – 22,863.61 | To priority tax claims (which exceed $22,863.61) |
| –0– | |

Under the trustee's proposed distribution, nonpriority unsecured creditors receive nothing.[3]

■ McPherson objects to the distribution and argues that the avoided lien should not be preserved. Specifically, McPherson says that preservation of an avoided lien under § 551 should only be allowed when nonpriority unsecured creditors are to receive the benefit of the preserved lien.

McPherson's argument is not persuasive. Section 551 states:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

1. The Memorandum Opinion and Judgment did not state the amount of the lien but McPherson and the trustee stipulated in the adversary proceeding that the amount of the McPherson lien was $22,061.18 plus interest from May 13, 1983, at the rate of 8% per annum plus attorney's fees.

2. The Memorandum Opinion and Judgment did not state the amount of the lien but there was *no dispute between Wilson and the trustee that* the amount of the Wilson lien is $43,857.45.

McPherson's counsel has advised the court that McPherson does not dispute this figure.

3. The proceeds from the sale of the real property and the interest earned on those proceeds constitutes almost all of the assets of the estate. The only other assets were a tax refund of $2.56 and an insurance refund of $80.05. Those sums would be paid to costs of administration and have *no effect upon any distribution to McPherson.*

Preservation of an avoided lien is not conditioned on nonpriority unsecured creditors receiving the proceeds. Preservation is automatic "for the benefit of the estate." Clearly, the estate benefits if the proceeds will be used to pay costs of administration and priority claimants.

McPherson relies primarily on the case of *In re Appalachian Energy Industries, Inc.*, 25 B.R. 515 (Bankr.M.D.TN 1982). In that case the junior lienholder prevailed because the unperfected lien which was avoided and preserved was not sufficient to defeat the perfected junior lien. In the present case, however, the avoided lien was properly perfected and clearly has priority over McPherson's junior lien.

■ Preservation of the avoided Wilson lien is entirely consistent with the purpose of § 551. "Section 551 is intended to prevent the windfall to junior lienors that would otherwise result when a trustee in bankruptcy successfully avoids a senior lien on property." *Appalachian Energy* at 516. According to the legislative history, "[t]he section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 376 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 91 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5877, 6332.

McPherson's final argument is that there must be notice to the junior lienholder before the lien can be preserved. The preservation, however, is automatic and, in any event, McPherson was given the opportunity to object and to be heard in opposition to the proposed distribution.

Since the avoided, but preserved, Wilson lien in the amount of $43,857.45 is greater than the $42,460.54 net proceeds from the sale of the real property, the inferior McPherson lien has no rights to any of the sale proceeds.

Accordingly, the distribution proposed by the trustee is approved.

SO ORDERED.