**SOUTHEASTERN SAVINGS & LOAN ASSOCIATION, Appellant,**

v.

**RENTENBACH CONSTRUCTORS, INC., Appellee, Cross–Appellant.**

**No. 89–314–CIV–5.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Aug. 28, 1989.

Diane P. Bishop, Benjamin F. Davis, Smith, Helms Mulliss & Moore, Greensboro, N.C., for appellee, cross-appellant.

William H. McCullough, Lisa N. Nieman, Adams, McCullough & Beard, Raleigh, N.C., for appellant.

## ORDER

BRITT, Chief Judge.

This matter is before the court on cross appeals from an order of the Bankruptcy Court for the Eastern District of North Carolina, pursuant to Title 28, United States Code, Section 158. The issues have been thoroughly briefed, a hearing held, and the matter is now ripe for disposition.

## BACKGROUND

On 27 October 1988 a trial in an adversary proceeding was held before Judge Thomas Small. The principal issue before that court was whether plaintiff Rentenbach's (hereinafter appellee) materialmen's lien is superior to defendant Southeastern's (hereinafter appellant) deed of trust covering the same property. On 15 March 1989 the court issued an opinion finding in favor of appellee.

The findings of fact of the bankruptcy court were prepared by appellee and agreed to by the parties. Briefly summarized, appellee entered into a contract with the debtor to furnish renovation services for the Capital Club Building located in Raleigh, North Carolina. Appellant loaned the debtor money to accomplish same.

The events that led to this dispute are as follows: On 31 December 1984 Capital Club Associates, Ltd. (CCA–F), a Florida limited partnership [not the debtor, CCA–NC, a North Carolina limited partnership] acquired title to the Capital Club Building. On 26 July 1985 CCA–F changed its name to Urban Properties IV, Ltd. (its original name). During July 1985 appellee negotiated with the soon-to-be-formed limited partnership, CCA–NC, to furnish the renovation services. At the same time Urban Properties, as the owner of the property and general partner on the proposed project, obtained financing from appellant. On 5 August 1985 CCA–NC executed a deed of trust in favor of appellant. The deed of trust was signed as follows: "CAPITAL CLUB ASSOCIATES, LTD., a North Carolina limited partnership By its Sole General Partner: URBAN PROPERTIES, IV, LTD., a Florida limited partnership." Allen J. Koch actually signed the deed of trust. At that time, CCA–NC was not the owner of the property. On 14 August 1985 the property was deeded by Urban Properties to CCA–NC [the deed was back dated to 1 August 1985]. The deed of trust in favor of appellant was not rerecorded until 20 May 1987. Appellee commenced work in August 1985 and, following completion of its services, filed a lien in March 1987.

Appellee successfully argued before the bankruptcy court that the original filing was ineffective and outside of CCA–NC's chain of title. The court was persuaded that appellee's lien preceded the effective deed of trust of May 1987 and is therefore superior.

The bankruptcy court determined the amount of appellee's lien to be $334,377 plus interest pursuant to the terms of the construction contract. The court arrived at this figure by adding the final actual costs, a base fee as called for in the contract and an additional fee provided for in the event of changes in work and then deducting an amount of retainage [1] which the court determined appellee had waived.

On appeal, Southeastern contends first, that appellee Rentenbach failed to establish a valid laborer's and materialmen's lien on the debtor's property; second, that the bankruptcy court erred in finding appel-

---

[1] Appellee Rentenbach would submit a bill for a specified period of time. "[F]or fees earned by Rentenbach during the periods covered ... a certain amount [of payment was] withheld as retainage until the final Payment Request."

lee's lien superior; and third, that the court erred in its determination of the amount of the lien in favor of appellee. Rentenbach's cross-appeal alleges that the bankruptcy court erred when it concluded that Rentenbach waived $91,662 in retainage funds.

## DISCUSSION

Upon review of a final order of a bankruptcy court by this court, findings of fact may be set aside only if clearly erroneous. Rule 52(a), Fed.R.Civ.P.; *Reconstruction Finance Corp. v. Denver*, 328 U.S. 495, 66 S.Ct. 1282, 90 L.Ed. 1400 (1946).[2] The bankruptcy court's conclusions of law, however, are not entitled to such deference and are considered anew. *See In re Silver*, 46 B.R. 772 (D.Colo.1985); *Goldsby v. Stewart*, 46 B.R. 692 (S.D.Ala.1983).

Appellant's first contention is that the bankruptcy court erred in concluding that appellee established a valid laborer's and materialmen's lien on the debtor property. Appellant did not raise this issue during the pretrial conference and no such contention is found in the pretrial order. Appellee contends that appellant has waived this argument since under Local Rule 25.03(b) "[c]laims and defenses as to which no contentions are listed in the pretrial order are deemed abandoned." Appellant seeks to avoid operation of this rule by arguing that the establishment of the validity of the lien was part of appellee's burden of proof and that appellant was not required to raise the issue before trial. There is authority which recognizes that there is nothing in Rule 16 of the Federal Rules of Civil Procedure which "suggests that a party waives or admits an issue as to which his opponent has the burden of proof by failing to include the issue in his pretrial stipulated list of remaining issues." *Pacific Indemnity Co. v. Broward County*, 465 F.2d 99, 103 (5th Cir.1972). Whether such an issue is considered is within the judge's discretion. *Id.* The court will consider this challenge.

█ Under N.C.Gen.Stat. § 44A–8:

Any person who performs or furnishes labor or professional design or surveying services or furnishes materials pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a lien on such real property to secure payment of all debts owing ... pursuant to such contract.

According to appellant, in order to establish a valid lien, appellee must prove:

(1) that it performed pursuant to a contract;

(2) that its contract was with the owner of the property (or a successor in interest); and

(3) the date it first furnished labor or materials at the Capital Club Building.

The court is persuaded that appellee has established these elements. It is undisputed that appellee performed pursuant to a contract. It is also undisputed when appellee first furnished labor and/or materials at the Capital Club Building. *See* Findings of Fact Nos. 22 and 41. What is disputed by appellant is whether appellee can establish that its contract was with the owner of the property without simultaneously defeating the priority of its lien. Appellant contends that in order to establish this element appellee

would be required to rely on the same evidence of record which Rentenbach contends Southeastern cannot rely, namely, the Deed recorded August 14, 1985, conveying the property from Urban Properties to CCA–NC. This deed recites that Urban Properties is the successor in interest to CCA–F, information which is an essential link in both Rentenbach's and Southeastern's chain of title and thus establishes the validity and priority of their respective liens.

Appellant is mistaken. There is no question as to the validity of the deed of 14 August 1985. As of that date, CCA–NC became the legal owner of the Capital Club

**2.** As the findings of fact below were agreed to by the parties no challenge thereto will be recognized by this court.

Building. The fact that the deed refers to Urban Properties as successor in interest to CCA–F does not save appellant from the consequences of its failure to rerecord a valid deed of trust in a timely fashion. The reference to Urban Properties and CCA–F does not bring the deed of trust filed 5 August 1985 into CCA–NC's chain of title. Even absent an explicit finding by the bankruptcy court, this court is persuaded that all of the elements necessary to establish a valid lien under N.C.Gen.Stat. Chap. 44A were met.

■ Appellant next contends that the bankruptcy court erred when it concluded that appellee's lien is superior to appellant's. Judge Small recognized that since appellee had actual notice of appellant's deed of trust the equities seem to favor appellant. However, relying principally on *Schuman v. Roger Baker & Associates,* 70 N.C.App. 313, 319 S.E.2d 308 (1984),[3] he also recognized that North Carolina law favors appellee. Judge Small was not convinced that the Capital Club Building was the property of CCA–NC prior to the time that the property was deeded to it by Urban Properties on 14 August 1985. Further, Judge Small was not persuaded that appellee had constructive notice of the deed of trust held by appellant. While the deed recorded 14 August 1985 and the deed of trust recorded 5 August 1985 were listed in the grantor index under the names of both Urban Properties and CCA, Ltd., Judge Small noted that there was no mention in the index of whether the reference to CCA was to the North Carolina limited partnership ("CCA–NC") or to the Florida limited partnership ("CCA–F"). The 14 August deed conveying the property from Urban Properties to CCA–NC does not make any reference to the earlier deed of trust in favor of appellant. As such, Judge Small held that the deed of trust recorded on 5

August did not provide appellee with constructive notice.

As of 5 August 1985 Urban Properties owned the Capital Club Building but, as stated by Judge Small, "the deed of trust which was recorded did not convey Urban Properties' interest in that property, but instead purported to convey the interest of CCA–NC." Opinion at pp. 19–20. This interest, of course, was an interest which CCA–NC did not have. The deed was indexed with CCA as grantor and thus was recorded outside of CCA–NC's chain of title and "has the same effect on notice as no registration." *Schuman,* 70 N.C.App. at 316, 319 S.E.2d at 310.

Appellant argues that partnership law should dictate the effect of the deed of trust. Appellant contends that as of 5 August 1985 Urban Properties (as true owner of the property) actually executed the deed of trust through its general partner; thus, appellant contends this case is distinguishable from *Schuman.*

Appellant points out that the 5 August 1985 deed of trust, which lists CCA–NC as grantor, also reveals that Urban Properties, the actual owner of the property, executed that deed of trust as general partner. Directing the court's attention to N.C.Gen. Stat. § 59–39(a)[4] appellant points out that the 5 August 1985 deed of trust was signed by Allen J. Koch, as the general partner of Urban Properties, and that "[b]y letter dated August 16, 1985, Mr. Koch advised [appellee] that he had authority as general partner ... to sign for the partnership on any and all agreements." *See* Opinion at pp. 4–5; Trial Exhibit H. It is undisputed that Urban Properties was bound by the deed of trust signed by Koch. That conclusion, however, does not answer the question of the validity of the 5 August 1985 deed of trust with respect to anyone else.

---

3. In *Schuman,* the debtor executed a deed of trust when it did not hold title to the subject property. The debtor subsequently obtained title, but the court held that the original deed of trust was ineffective even though the subsequent creditor had actual notice of the first attempted deed of trust.

4. N.C.Gen.Stat. § 59–39(a) provides, in part:

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership....

Appellant urges this court to put a whole new gloss on title searches; that is, appellant would demand title searches be conducted in any number of directions depending on the existence of partnership arrangements. The overlay of partnership law is inappropriate here. Principles of partnership law do not aid in the resolution of this dispute and do not control its outcome; rather, the rules under N.C.Gen. Stat. Chapter 47 illustrate that Judge Small correctly concluded that the deed of trust filed 5 August 1985 was ineffective and therefore outside of CCA–NC's chain of title. As the courts of North Carolina have often said, "[N]o notice, however full or formal, will supply the want of registration...." *Schuman,* 70 N.C.App. at 316, 319 S.E.2d at 310.

■ Finally, appellant contends that the bankruptcy court erred in its calculation of the amount of appellee's lien. Appellant contends, *inter alia,* that Judge Small failed to consider the operation of Article 9.3.3. of the "General Conditions of the Contract for Construction" (supplement to the contract between appellee and the debtor). Appellant argues that this contract provision bars "most, if not all, of [appellee's] lien amounts." Article 9.3.3. provides, in part, that:

> The Contractor warrants that title to all Work, materials and equipment covered by an Application for Payment will pass to the Owner either by incorporation in construction or upon the receipt of payment by the Contractor, whichever occurs first, free and clear of all liens, claims, security interests or encumbrances....

Appellant argues that under this provision an application for payment by appellee warranted that it was free and clear of all, *including its own,* liens. It appears that appellant waived this argument when it failed to raise it at trial. The court has, nevertheless, considered this issue and is persuaded that Article 9.3.3., if construed

as appellant urges, that is, as a complete waiver of statutory lien rights, is invalid and unenforceable under North Carolina law.[5] Additionally, it appears to the court that this provision is intended to cover the liens of materialmen and subcontractors.

Appellant also challenges the bankruptcy court's conclusion that appellee is entitled to a portion of the "savings" (as provided in the contract agreement) and an additional contractor's fee for changes in work because appellee failed to establish the actual costs it incurred. The bankruptcy court relied instead on estimated costs. Appellant argues that under Article 7.1 of the construction contract appellee was required to show actual costs. Article 7.1 refers to "costs." There is no further explicit direction as to how those "costs" are to be determined. The court is persuaded that it was not necessary for actual costs to be proven, particularly in light of the stipulation of the parties as to the figures involved.

The court next addresses appellant's challenge to the final calculations by alleging that the "guaranteed maximum cost of the contract is suspect" because it was arrived at by letter agreement between the debtor and appellee two months after debtor's petition in bankruptcy. Appellant does not further elaborate on this comment and the court will not further consider the accusation.

Appellant also contends that appellee should have separated the original costs and those associated with the change in work orders. Upon review of Articles 5–7 of the construction contract the court is not persuaded that any such accounting is required.

Finally, appellant challenges the $334,377 figure arrived at by the bankruptcy court's calculations. In arriving at the amount of the lien, Judge Small relied principally on the testimony of the Vice President of appellee *and the parties' stipulations.* The

5. N.C.Gen.Stat. § 44A–12(f) provides:
    An agreement to waive the right to file or claim a lien granted under this Article, which agreement is in anticipation of and in consideration for the awarding of any contract, ei-

ther express or implied, for the making of an improvement upon real property under this Article is against public policy and is unenforceable.

court has found no error in Judge Small's calculations.[6]

Appellee's cross-appeal raises a single challenge to the bankruptcy court's order. Appellee contends that Judge Small erred in concluding that Rentenbach waived its lien rights with regard to retainage in the amount of $91,662. Judge Small's interpretation of the waivers found in affidavits submitted by appellee is reasonable. Furthermore, the right to retainage sum, though not immediately due as of that payment, nevertheless existed and fell within the phrase "any and all lien, bond and claim rights arising out of performance of contract work...."

Accordingly, the court is persuaded that none of the issues raised by appellant or appellee have merit. The order of the bankruptcy court is hereby AFFIRMED.

---

6. The court also notes that appellant's challenge ignores figures to which it stipulated. For example, Finding of Fact #36 sets forth the amount Rentenbach was paid (prior to bankruptcy). Appellant uses another, higher, figure in its offered calculations. If appellant had proof that contradicted appellee's offered figures, it should have contested that finding of fact when appellee submitted it.